(No. 4920—)

Lucius Steward Flournoy, a minor, by Lula Mae Flournoy, his Mother and next friend, Claimant, vs. State of Illinois, Respondent.

*Opinion filed March 18, 1963.*

Warren F. and Robert L. Landsman, Attorneys for Claimant.

William G. Clark, Attorney General; Sheldon K. Rachman, Assistant Attorney General, for Respondent.

Fearer, J.

Claimant, Lucius Steward Flournoy, a minor, by Lula Mae Flournoy, his Mother and next friend, brings this action against the State of Illinois as a result of an accident, which occurred on April 25, 1960.

Claimant, Lucius Steward Flournoy, at said time was an inmate of the Illinois State Training School for Boys at St. Charles, Illinois. He was fifteen years of age, and for the first time was assigned to work in the cannery building along with three other boys. It appears that this was the first time that he had ever been in the cannery building. His immediate supervisor, or foreman, was a Mr. William Dawson, who directed the boys to

push two carts on the elevator to be taken to the second floor.

Claimant is relying upon the fact that he was a minor, fifteen years of age, and taking into consideration his age, intelligence, and experience for a boy fifteen years of age, he did not have sufficient knowledge without ample instruction to close the elevator doors, which he claims he did at the insistence of Mr. Dawson, without any previous knowledge and instructions. Futhermore, that the device or strap, which was ordinarily used in the closing of the doors, which were divided in the middle, and were of heavy gage steel, was missing, and that the only place that the boy could reach to close the doors was on the outside where he could take hold of a flange and pull the top door down, which would cause the bottom door to come up, so that the elevator could be moved.

Several photographs were introduced into evidence showing the outside and inside, and also showing a strap on the upper door on the inside, which was put on after the accident.

There is further evidence that the elevator doors had been equipped with a strap, which was ordinarily used in the closing of the doors.

There is evidence that there was a flange or angle inside and on the bottom of the upper door, approximately one inch wide and one and one-half inches in depth, which could have and should have been used by claimant in the closing of the doors.

Claimant, in closing the doors by reaching outside and pulling down, sustained an injury to his middle finger on his right hand, which was repaired by surgery, resulting in scarring, not only on his finger but keloid formations on the dorsal surface of the third finger, right hand, as well as on the inner right forearm where skin was taken for the purpose of making the flap over the finger.

First aid was given in the infirmary located on the grounds, and claimant was later taken to the Illinois Research and Educational Hospital, Chicago, Illinois, where he was hospitalized from April 25, 1960 to May 21, 1960, and surgery was performed.

He was later returned to the State Training School, where he was assigned and given light duties until his finger became healed and less tender.

Claimant is seeking damages for the loss of part of the right middle finger, right hand; deformity of the middle finger, right hand; keloid scarring and discoloration on the dorsal side of the distal phalanx of his ring finger, right hand; and, keloid scarring and discoloration of the inner aspect of the right forearm, the sight of the graft.

This Court has held in numerous cases that an inmate of a training school can maintain an action in this Court.

In passing upon this claim we are taking into consideration the age, intelligence and experience of a boy of the age of claimant; the duties to which he was assigned, and the question of whether or not he was properly instructed in the closing of the elevator doors, which is a part of the operation of the elevator; and, also, the lack of the device or strap, which had been formerly attached to the inside of the door, and used in the closing of the elevator doors.

The burden of proving freedom from contributory negligence is upon claimant. Again we are taking into consideration this boy's age, intelligence and experience; the negligence of respondent's agent, Mr. Dawson, who was in charge of claimant at the time in directing the work, the elevator, and the device used in the closing of the elevator doors; and, as to whether or not this boy

was sufficiently instructed in the closing of the doors; and, whether or not this door should have been equipped with a strap to be used in the closing of the doors, which would have been readily apparent to anyone even a boy of his age, intelligence and experience.

There is a dispute in the evidence as to whether or not claimant had been sufficiently instructed in the closing of the doors. Also, there is some dispute as to the sufficiency of the angle iron on the inside of the door, the heighth of it; and, whether the only means that claimant had in the closing of the doors was to reach outside, grab onto the angle iron, and pull down on the door, which would cause the bottom door to come up, the top door to come down, and be properly closed.

Respondent is relying upon certain conversations having taken place between claimant and his attorney, wherein he was asked, "Whether or not he was instructed in the closing of the doors", and his answer thereto was, "that he was."

Respondent makes no effort to go into any detail as to what instructions were given to this boy, or any other boy, in the operation of this elevator.

It appears from the record that it was difficult at first to put the top door in motion, but, once it was placed in motion, the action was rapid, which caused the doors to come together before claimant could remove his arm sufficiently to keep from having his finger severed.

It appears that the only person, who would be in a better position to know the action of the door in pulling it down, and the rapidity in which the two pieces of steel would come together, would be Mr. Dawson, and Mr. Dawson must have realized in working with claimant that he was an immature, inexperienced and inadequate boy for a boy of his age. We only make this last statement from

the evidence introduced as to the boy's schooling. The only thing that Mr. Dawson said to him was, ''Look out'', and this statement was made too late to avoid the accident.

We undoubtedly would look at this claim differently if we were dealing with an adult as distinguished from an immature boy of fifteen years of age, or, if we had a more intelligent boy than we are dealing with here.

We are also impressed with the fact that originally this elevator had a strap on it, which was used in the closing of the doors, and after the accident the strap was returned to be used for the closing of the elevator doors.

There is nothing to be gained by having this boy, or any other boy, close the elevator doors. We believe Mr. Dawson should have performed this act, particularly in view of the fact that, had he looked, he could have seen the boy put his arm outside, and he knew that a strap had been provided previously, but was not on the elevator door at the time. Therefore, the least he could have done would have been, if he asked this boy to close the elevator door, to instruct him not to place his hand outside, but if at all possible to pull down on the inside, as Mr. Dawson must have known that, once the two pieces of steel were placed into motion, the balance of the action would be rapid and dangerous.

After considering all of the medical testimony, viewing the exhibits, including the X-Rays, and counsel for claimant's reference to the Workmen's Compensation Act, irrespective of the fact that it is improper for anyone to place a specific percentage loss on the injury, we believe that a fair award would be $1,000.00.

An award is, therefore, made to claimant, Lucius Steward Flournoy, in the amount of $1,000.00.